## VIRGINIA: IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, NORFOLK DIVISION

| | | |
|---|---|---|
| **DESADRA TONEY,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _2:16 cv 461_ |
| | ) | |
| **NORFOLK REDEVELOPMENT and** | ) | **COMPLAINT FOR** |
| **HOUSING AUTHORITY,** | ) | **INJUNCTIVE AND** |
| Defendant. | ) | **DECLARATORY RELIEF** |
| | ) | |

COMES NOW your Plaintiff, DESADRA TONEY, and for her Complaint for Injunctive and Declaratory Relief against Defendant, NORFOLK REDEVELOPMENT and HOUSING AUTHORITY, respectfully pleads as follows:

### INTRODUCTION

1. Plaintiff, Desadra Toney (Ms. Toney), a low-income resident of Norfolk, Virginia, brings this suit because Defendant wrongfully terminated her from its public housing waitlist in violation of the Fourteenth Amendment of the United States Constitution, and in violation of the United States Housing Act, 42 U.S.C. § 1437(d)(c)(3), and its implementing regulations 24 C.F.R. § 960.200 *et seq.*, for allegedly falsifying the certification of a marriage license. Ms. Toney seeks redress for these violations under 42 U.S.C. § 1983.

2. Specifically, Defendant terminated Ms. Toney's application for public housing and removed her from its public housing waitlist without presenting any evidence against her, relying on evidence gathered outside of the hearing which Ms. Toney had no notice of and was afforded no opportunity to rebut. Defendant also impermissibly shifted the burden of persuasion to Ms. Toney at the hearing, during which neither of the

Defendant's agents who were present made any statement as to why she was being removed from its waitlist and presented no evidence against her, but merely asked her what she had to say.

3. Ms. Toney seeks declaratory relief to establish that Defendant denied the process due to her, in violation of 42 U.S.C. § 1983, by terminating her from the public housing waitlist without affording her the opportunity to hear the evidence against her and providing her an opportunity to rebut it.

4. Ms. Toney seeks to enjoin Defendant to enroll her in its public housing program and place her in the next available suitable unit.

## JURISDICTION AND VENUE

5. Subject matter jurisdiction of this Court arises under 28 U.S.C. § 1331, in that there are federal questions presented, and under 28 U.S.C. § 1343(a)(3), in that this action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of law, of rights and privileges secured by the Constitution and laws of the United States.

6. Personal jurisdiction of this Court over Defendant is proper because Defendant's offices are located in Norfolk, Virginia, and Defendant transacts business in Norfolk, Virginia.

7. Declaratory relief is available pursuant to 28 U.S.C. § 2201. The Court may grant further relief based on a declaratory judgment as appropriate under 28 U.S.C. § 2202.

8. Venue in this district is proper under 28 U.S.C. § 1391(b) in that Defendant transacts business in Norfolk, Virginia, and the conduct complained of occurred in Norfolk, Virginia.

## PARTIES

9. Desadra Toney is a forty-nine year old indigent grandmother, working a part-time job and raising two of her four grandchildren, who cannot afford rent for a basic home or apartment. She applied for public housing with Defendant in 2010. In October 2015, Defendant notified Ms. Toney that she was ineligible for public housing based on their determination that she engaged in misrepresentation by falsifying a signature on a legal document. Ms. Toney requested an informal review and, despite having no evidence presented against her at the hearing, or the decision explained to her in any way, was denied entry into Defendant's public housing program.

10. Defendant, Norfolk Redevelopment and Housing Authority ("NRHA"), is a political subdivision of the Commonwealth of Virginia, created under § 36-1, *et seq.*, of the Code of Virginia, 1950, as amended. NRHA is and was at all times relevant to this action a Public Housing Agency ("PHA") as that term is defined by 24 C.F.R. § 982.4.

## STATUTORY AND REGULATORY FRAMEWORK

11. The Public Housing Program is a federal program overseen by the Department of Housing and Urban Development ("HUD") which provides subsidies to local PHAs enabling them to operate housing projects for low-income people. This program is authorized by the United States Housing Act of 1937, 42 U.S.C. § 1437, *et seq.* HUD promulgates implementing regulations interpreting the law's requirements for admission into and denial of entry into the Public Housing Program, set forth in Title 24 Section § 960.101 *et seq.* and in its Public Housing Occupancy Guidebook. Local PHAs are required to set forth their own policies designed to comport with both HUD regulations and the United States Code in their Admission and Continued Occupancy Plan

("ACOP"). Defendant has issued an ACOP outlining admission into and denial of entry into its Public Housing Program.

12. Under the Public Housing Program, low income persons seeking entry into the program apply to and are reviewed by the PHA for their eligibility in the program. Specifically, the PHA reviews and verifies the applicant's household composition and income, citizenship/immigration status, and qualifications for the program based on the PHA's preferences, as well as reviewing and verifying the applicant and applicant's household for suitability. 42 U.S.C. § 1437d(c); 24 C.F.R. § 960.200 *et seq.* Requirements for admission have to be objective and reasonable. 24 C.F.R. § 960.203(c).

13. While nothing in the United States Code, or in the Code of Federal Regulations, specifically addresses the falsification of records by an applicant, HUD's Public Housing Occupancy Guidebook does state that the falsification of records by an applicant is grounds for rejection from the Public Housing Program where such falsification/misrepresentation "affect[s] eligibility, preferences, applicant selection criteria qualification, allowances or rent. This provision should not be applied to minor mistakes that produce no benefit to the applicant." Public Housing Occupancy Guidebook, Section 7.8. Defendant's ACOP provides that, as a part of the suitability screening process, applicants found to have falsified information can be denied entry into the program and must wait three years prior to reapplying. Norfolk Redevelopment and Housing Authority ACOP, pages 2-12.

14. Applicants who are denied entry into the Public Housing Program are entitled to a hearing at which they are afforded the right to hear the basis of the adverse action by the PHA and are given an opportunity to dispute that decision and its basis. 42 U.S.C. §

1437d(c)(3); 24 C.F.R. § 960.208; Public Housing Occupancy Guidebook, Section 4-9; NRHA ACOP, 13-2.

15. Section 13-2 of Defendant's ACOP specifically provides that "the applicant may bring to the hearing any documentation he/she wishes. The applicant's information, along with data compiled by NRHA will be considered by the Hearing Officer. A determination will be made based upon the merits of the evidence presented by both sides." NRHA ACOP, 13-2.

16. The Supreme Court held in *Goldberg v. Kelly* that, "the Due Process Clause of the U.S. Constitution requires that welfare recipients be afforded an evidentiary hearing with minimum procedural safeguards before their benefits may be terminated." *Goldberg v. Kelly*, 397 U.S. 254, 266 (1970). The Fourth Circuit Court of Appeals has applied *Goldberg* to PHAs finding that tenants are entitled to the procedural protections outlined in *Goldberg*. *Caulder v. Durham Housing Authority*, 433 F.2d 998, 1004 (4th Cir. 1970).

17. Eligible public housing applicants also have a recognizable property interest that is constitutionally protected under the 14th Amendment, and due process applies. *Davis v. Toledo Metropolitan Housing Authority*, 311 F. Supp. 795, 797-798 (N.D.Ohio 1970) ("Since the recent decision of the Supreme Court of the United States in *Goldberg, Commissioner v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, and *Wheeler v. Montgomery, Director*, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307, there can be little doubt that recipients of public benefits are entitled to an evidentiary hearing before their benefits may be terminated. It seems clear, therefore, that those seeking to be declared eligible for public benefits may not be declared ineligible without the opportunity to have an evidentiary hearing. In spite of plaintiffs' demand for such a hearing, it was not

granted.); *Neddo v. HACM*, 335 F.Supp. 1397, 1400 (E.D.Wis. 1971) (citing to *Davis* and

holding that an applicant to public housing has a procedural due process right to an

informal hearing and delineating the requirements for such a hearing); *Holmes v. New*

*York City Housing Authority*, 398 F.2d 262, 266 (2 Cir. 1968) ("There is no merit in the

Authority's contention that the plaintiffs are without standing to raise the due process

objection. As applicants for public housing, all are immediately affected by the alleged

irregularities in the practices of the Authority."[1]); *Tedder v. Housing Authority of*

*Paducah*, 574 F.Supp. 240, 244-45 (W.D. Ky. 1983) ("Applicants for public housing

have a legitimate expectation that their application will be fully considered and not

unfairly denied. The Court is persuaded that applicants for public housing have a

"property interest" cognizable under the Fourteenth Amendment. *Singleton v. Drew*, 485

F.Supp. 1020, 1022–1023 (E.D.Wis.1980). Entitlement to public assisted housing for the

needy is a significant benefit granted by Congress, which the qualified are entitled to

enjoy."); *McNair v. New York City Housing Authority*, 613 F.Supp. 910, 914-916 (S.D.

NY 1985) (holding that the Defendant's procedures for notice of the informal hearing and

the procedures around the hearing itself are constitutionally inadequate and violative of

due process); *Billington v. Underwood*, 613 F.2d 91 (5th Cir. 1980) (holding that the

informal hearing provided to applicant was procedurally defective and did not provide

adequate due process to applicant).

18. At a minimum, the hearing must provide the applicant with an opportunity, before an

impartial decision maker, "to present evidence, to question witnesses and examine the

---

[1] The Fourth Circuit Court of Appeals, in *Phelps v. Housing Authority of Woodruff*, 742 F.2d 816, 822-823 (4th Cir., 1984), has disagreed with the holding of Holmes only insofar as it in conflict with its decision in *Phelps*. However, *Phelps* is distinguishable from the instant case. The *Phelps* Court held that an applicant had no enforceable right in the mechanics of how a waitlist is administered. Here, Ms. Toney was denied admission to the public housing program without the due process of law guaranteed to her under the 14th Amendment and 42 U.S.C. § 1437d(c)(3).

evidence against him." *Singleton v. Drew*, 485 F.Supp. 1020, 1025 (E.D. Wis. 1980). These due process requirements are also codified by the United States Housing Act of 1937 and HUD regulation.  42 U.S.C. § 1437d(c)(3); 24 C.F.R. § 960.208.

## FACTS

19. On or about 2010, Ms. Toney applied for public housing with Defendant.  She was placed on Defendant's waitlist.

20. By letter dated August 4, 2015, Ms. Toney received a notice from Defendant advising her that she was scheduled for a preliminary interview on August 18, 2015, at 9 a.m. to determine her eligibility for Defendant's public housing program.  See August 4, 2015, letter, attached hereto and incorporated herein as Plaintiff's Exhibit A.  The appointment was with Jamie Fleetwood, Defendant's employee, and Ms. Toney was instructed to bring various documents with her such as birth certificates, Social Security cards, income verification, and other documentation concerning her marital status.  Ms. Toney is married but has been continuously separated from her spouse, Mr. David Toney, since 1992.

21. On August 18, 2015, at the preliminary interview, Ms. Fleetwood instructed Ms. Toney that she needed to bring in her grandson Demarius Toney's birth certificate, a statement that was she separated from her spouse and was not intending to reconcile, and a copy of her marriage license, in order to continue with the application process.

22. Ms. Toney gathered these documents together.  On or about September 12, 2015, Ms. Toney attended a cookout and her book bag, which she always keeps with her, got wet in a rainstorm.  Ms. Toney kept her paperwork in a plastic cover sheet in a folder in the bag.

These papers got wet when the book bag got wet.  After she got home, Ms. Toney laid her papers out to dry on her ironing board.

23. On or about September 14, 2015, Ms. Toney dropped off Demarius Toney's birth certificate, a certified statement indicating that she had been separated from Mr. Toney since June 1992, and a certified copy of her marriage license from the Virginia Beach courthouse.  Due to the papers getting wet in the rainstorm at the cookout, the certification stamp from the marriage license bled onto the notarized statement of separation.  See notarized statement and marriage license, attached hereto and incorporated herein as Plaintiff's Exhibits B and C respectively.

24. At the time she dropped off the requested documents, the Defendant's receptionist advised Ms. Toney that she believed the notary certification on the marriage license was falsified because it should have bled more when wet and the clerk's signature looked too clear.  Nevertheless the receptionist, after consulting with her supervisor, made copies of Ms. Toney's documents and returned the originals to her.

25. By letter dated October 15, 2015, Ms. Toney received notice from Defendant indicating that she was ineligible for the low income affordable housing program for "misrepresentation; falsifying a signature on a legal document."  See letter dated October 15, 2015, attached hereto and incorporated herein as Plaintiff's Exhibit D.  Defendant did not explain in this letter, and has never explained to Ms. Toney at any time, why it feels the marriage license was falsified, and she has been forced to speculate as to Defendant's exact concern.

26. Ms. Toney timely noted her appeal of this decision by written statement on or about October 20, 2015. See notice of appeal attached hereto and incorporated herein as Exhibit E.

27. By letter dated November 1, 2015, Defendant scheduled Ms. Toney's informal hearing regarding the denial for November 10, 2015. See letter dated November 1, 2015, attached hereto and incorporated herein as Defendant's Exhibit F.

28. Defendant rescheduled this hearing for its own reasons and Ms. Toney was informed by letter dated November 16, 2015, that her informal hearing would occur on November 24, 2015, at 10 am. See letter dated November 16, 2015, attached hereto and incorporated herein as Plaintiff's Exhibit G.

29. At the hearing on November 24, 2015, which occurred at Defendant's offices on Granby Street, two women were present, including Ms. Mary Jackson, the hearing officer.

30. At the hearing, Defendant's agents asked her what her side of the story was. No evidence was presented and no explanation was made as to why Ms. Toney was being accused of falsifying documents.

31. Ms. Toney, assuming that the Defendant's concerns stemmed from the receptionist's statements to her when she submitted the marriage license initially, that the signature on the certification should have run more when wet, explained the documents got wet at a cookout while in a plastic sheet cover in her book bag and provided a second certified copy of the marriage license, certified by the same clerk as the copy previously submitted, which Defendant refused to take. See marriage license, attached hereto and incorporated herein as Plaintiff's Exhibit H.

32. Ms. Toney heard nothing from Defendant. In January 2016, she went to Defendant's offices on Granby Street and got a copy of the denial letter dated January 5, 2016, which she had never received. See letter dated January 5, 2016, attached hereto and incorporated herein as Plaintiff's Exhibit I. This letter also fails to state why Defendant determined Ms. Toney falsified her marriage license.

33. Upon information and belief, subsequent to the hearing on November 24, 2015, and prior to the decision letter dated January 2016, one of Defendant's employees called the Virginia Beach Circuit Court Clerk's office and spoke to the deputy clerk, Stephanie Manis, who certified both copies of Ms. Toney's marriage license. Based on Ms. Manis' report that she usually used black ink to certify, Defendant denied Ms. Toney entrance into the public housing program. This decision was made after the informal hearing, with evidence obtained after the hearing, which was never presented to Ms. Toney, and to which Ms. Toney was never given an opportunity to respond or rebut.

34. Defendant's Executive Director, John Knowack, is the chief policymaker for Defendant. Mr. Knowack is responsible for implementing Defendant's Public Housing Program in a manner consistent with federal and state laws and regulations.

35. By letter dated March 10, 2016, Ms. Toney, by counsel, asked Defendant's Executive Director, John Knowack, to rescind Defendant's decision to deny Ms. Toney entry into the Public Housing Program. See letter dated March 10, 2016, attached hereto and incorporated herein as Plaintiff's Exhibit J. By letter dated July 13, 2016, Defendant upheld its decision to deny Ms. Toney entry into the Public Housing Program and Mr. Knowack has accordingly approved of Defendant's denial of Ms. Toney into the Public

Housing Program. See letter dated July 13, 2016, attached hereto and incorporated herein as Plaintiff's Exhibit K.

**COUNT ONE: Failure to Provide Plaintiff an Opportunity to Present Evidence, To Question Witnesses and Examine the Evidence against Plaintiff**

36. Ms. Toney re-alleges and incorporates herein each and every allegation contained in the preceding paragraphs.

37. On November 24, 2015, Defendant, through its agents, made no statement or explanation of the allegations against Ms. Toney, failed to provide her with an opportunity to question its witness, Stephanie Manis, who the Defendant had not even contacted as of the date of the hearing, and failed to accept the evidence Plaintiff attempted to present at the hearing, in particular a new certified copy of Ms. Toney's marriage license, which was also certified by Deputy Clerk, Stephanie Manis.

38. Defendant, after the hearing date, made its own investigation of the matter, by contacting Deputy Clerk Stephanie Manis. Defendant apparently determined, in secret, and without allowing Ms. Toney any opportunity to respond, that Deputy Clerk Stephanie Manis usually used black ink, that the initial certified copy of the marriage license was signed in blue ink, and that therefore Ms. Toney falsified her marriage license.

39. Defendant, acting under the color of state law, has acted in an arbitrary and capricious manner and has violated Ms. Toney's right to due process guaranteed to her by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1437d(c)(3), and 24 C.F.R. § 960.208, by failing to provide her with an informal hearing which complies with the minimum due process required for public housing applicants, by failing to provide an opportunity to review the evidence used against her, by failing to provide her

an opportunity to question the witnesses used against her and by basing the decision on evidence which was, in fact, gathered by Defendant after the hearing had concluded and never disseminated to Ms. Toney. This violation is actionable under 42 U.S.C. § 1983. *Billington v. Underwood*, 613 F. 2d 91, 95 (5th Cir. 1980) ("The very notion of a hearing, however informal, connotes that the decision maker will listen to the arguments of both sides before basing a decision on the evidence and legal rules adduced at the hearing."); *Singleton v. Drew*, 485 F. Supp. 1020, 1025 (E.D. Wis. 1980) ("At the hearing, the applicant must be allowed to present evidence, to question witnesses and examine the evidence against him.").

**COUNT TWO: Failure to Issue a Decision with Evidentiary or Legal Support**

40. Ms. Toney re-alleges and incorporates herein each and every allegation contained in the preceding paragraphs.

41. As Defendant presented no evidence at the informal hearing held on November 24, 2015, and refused to allow Ms. Toney to present her own evidence, the Hearing Officer's decision had no evidentiary or legal support as of the day of the hearing.

42. To the extent that Defendant's decision was based on evidence that Defendant gathered after the hearing and failed to provide to Plaintiff at the hearing, its decision based on evidence so gathered is invalid and should be set aside. *Billington v. Underwood*, 613 F.2d 91, 95 (5th Cir. 1980). See also, *Singleton v. Drew*, 485 F.Sup. 1020, 1025 (E.D. Wis., 1980). The relevant portion of the United States Housing Act of 1937, 42 U.S.C. §1437d(c)(3), and the implementing regulation found in 24 C.F.R. 960.208, clearly state that an informal hearing is required when an applicant is denied admission into the public housing program and so requests such a hearing. The purpose of such a hearing is to

provide applicants with an opportunity to confront the evidence against them and provide evidence in rebuttal, and the Hearing Officer's decision should be based upon the material presented at the hearing. *Singleton v. Drew*, 485 F. Supp. 1020 (1980) ("At the hearing, the applicant must be allowed to present evidence, to question witnesses and examine the evidence against him… The ultimate decision, based on the material presented at the hearing, must be issued promptly following the hearing.") Defendant's own informal hearing procedures as set forth in its ACOP acknowledge as much. NRHA ACOP, Section 13-2.

43. Defendant, acting under the color of state law, has acted in an arbitrary and capricious manner and has violated Ms. Toney's right to due process guaranteed to her by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1437d(c)(3), and 24 C.F.R. 960.208, by failing to provide her with a decision based on evidence presented at the hearing to which she was afforded the opportunity to respond. This violation is actionable under 42 U.S.C. § 1983.

### REQUEST FOR RELIEF

WHEREFORE, Ms. Toney requests that this Honorable Court:

1. Assume jurisdiction over this action;

2. Enter an Order enjoining Defendant to reinstate Ms. Toney into the Public Housing Program, and place her in the next available suitable unit;

3. Declare that Defendant has violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1437d(c)(3), and 24 C.F.R. 960.208;

4. Impose costs on Defendant, and award Ms. Toney reasonable attorneys' fees;

5. Award Ms. Toney such other further relief as the Court deems fair and proper.

Respectfully Submitted:

Date: 7/26/16

Sarah Black, Esquire
Virginia State Bar No. 70813
Attorney for Desadra Toney
Legal Aid Society of Eastern Virginia
125 St. Paul's Blvd., Ste. 400
Norfolk, VA 23510
sarahb@laseva.org
Phone: (757) 627-5423, extension 123
Fax: (757) 627-7582